Next case on this morning's docket is Cheryl and Cheryl Sabol v. Michael Dennis and Dennis Technology v. Brent Mextel et al. We have Mr. Thomas Megg for the appellant and we have Deborah Hogan for the applicant. You may proceed when you're ready to Mr. Megg. Thank you, Your Honor. May it please the court, counsel. My name is Thomas Megg and I represent Dennis Technology in this appeal. The subject of this appeal, quite simply, is one of arbitration. My client, Dennis Technology, at least prior to the termination by Sprint, was a Sprint and formerly a Nextel cellular phone retail store operator in Edwardsville, Illinois. My client, Dennis Technology, became a Nextel cellular phone dealer in, I believe, May of 2002 is when the record was released. And for the next several years, my client proceeded with Nextel, selling Nextel cellular phones. I think the record reflects that there were no substantial problems with the relationship with Nextel. At some point, Nextel was purchased by Sprint. They call it a merger, but I think it's probably more of an acquisition. In any event, after the merger acquisition, however it is to be phrased, my client was rebranded from a Nextel dealership to a Sprint dealership. After this initially happened, this rebranding, a new contract was provided to my client of Sprint that basically reenacted the prior arrangements, only reflected that the merger or acquisition had taken place. And there started to be some problems after that. In May of 2006, I believe the record reflects, my client was approached by Sprint and presented with a new contract. And I think when this new contract was presented, my client was told point blank by Sprint that the purpose was to effect a compensation change. My client, Dennis Technology, resisted this contract. This contract had in it, however, an arbitration provision. And that's what we're here to talk about today is the arbitration provision in the May 2006 contract. Authorized representative agreement, it's sometimes referred to in the brief, or AR. Just to make a distinction here between some of our prior cases, there's no claim that your client didn't see the arbitration agreement or that it was in small print or anything like that. In fact, the record reflects, tell me if I'm right about this, that he knew it was in there and there was discussion about it. And he didn't like it. He didn't want it in there. My client didn't like it. We're trying to negotiate it out there. He absolutely knew it was there. There's no dispute about that. He hired counsel, discussed it with counsel, and tried to get it removed. That is correct. Sprint told my client point blank, this is a take it or leave it contract. There is no negotiation. You either sign the documents or we're going to terminate you. And my client resisted signing for a substantial period of time despite those initial threats. And finally Sprint told my client point blank, sign this or in 30 days you're not a Sprint agent. And with that background, my client ultimately did sign the document. And does the record reflect that it's the same document that was offered to all other Sprint representatives? That is the testimony of the witnesses from Sprint, and I think it's probably accurate. So everybody else got the same offer too? Take it or leave it? Everybody else got the same take it or leave it offer. In fact, the record is quite clear that the purpose of this document from Sprint's perspective was to make all of the dealers operate under the same regime across the entire country, regardless of the background or the differences that would be incumbent in any of the particular stores. My client's dentist technology at one time in the past, the record reflects, was a Sprint cellular phone dealer, not as a primary sales practice, but as one of the other brands that sold prior to the purchase or merger. And thus was very concerned about problems it was having with Sprint at that time and in the past. And that's the reason why the arbitration provision was resisted. Let me just ask a question here to make sure I understand what the record will reflect on this. Wasn't your client also given a choice? He didn't have to be exclusive Sprint. Correct. He could have also sold other cellular products besides Sprint, but he also chose to sign the exclusive Sprint agreement. Is that right? My client was given three basic options within this 2006 authorized representative agreement. One of which is my client being an exclusive Sprint dealer. The other is my client bringing on other cell phone distributor providers, and they were middle ground as well. So he could have hedged his bets, so to speak, on the possibility of losing the Sprint business and sold other products too, but he instead signed the exclusive agreement. Is that right? Yes, with the proviso that the record reflects that he actually looked for other cellular phone companies to represent, and the record reflects that none were available because the market was saturated in the Edwardsville Metro East area. In essence, while theoretically there was a choice, practically there was no choice because T-Mobile, Verizon, all the other providers were already represented and were not in the market for additional retailers. So in essence, my client chose the only choice in front of him, even though Sprint was offering three sub-variants of this contract. The contracting question, as mentioned before, has an arbitration provision, and that's what we're here arguing. The arbitration provision purports to be on behalf of Sprint Solutions, Inc., on behalf of itself and its affiliates that do not provide services within the geographic area of this contract. And the substantive part of my arguments focuses on why all of the third-party defendants with the exception of Sprint Solutions, Inc., are not subject to the arbitration provision. Quite simply, affiliates is defined in the contract, and it refers to the third parties not affiliated with Sprint that offer Sprint services outside of the geographic area covered by this agreement. So you have a contract that purports to bring in all of the Sprint affiliates, but then defines Sprint affiliates, and the testimony from Sprint's witnesses bears this out, excludes any of the companies actually owned by Sprint. Does that make sense? It makes absolutely no sense. Okay. I'm just asking. Okay. All right. The only logical way to interpret that, and as the contract was solely and exclusively drafted by Sprint, I think that this Court has an obligation to construe against the drafter, would be to read it as being brought on behalf of Sprint Solutions, Inc. and other cell phone dealers outside of the dentist technology provider. That is the only candidly rational interpretation of applying the definition of affiliates and the provision in the beginning of the contract that I can come up with. Okay. Say that again. I'm sorry. I need you to repeat that to me again. Sure. The only rational interpretation I can come up with is that by using the definition of affiliates as defined in the contract into the contractual provision that says it's brought on behalf of Sprint Solutions and its affiliates is to basically affiliates with the other Sprint cell phone dealers outside of dentist technology's exclusive marketing area. Okay. So, therefore, the contract is brought on behalf of Sprint Solutions and, for instance, dentist technology's competitor possibly in Belleville or Cairo or Chicago or St. Louis. Thus, all of the Sprint-owned entities that are subject to this suit are not subject to this contract, and ipso facto, they are not subject to the arbitration provision in this case. Obviously, a third party to an arbitration provision or a contract cannot invoke or rely on it unless the contract expressly gives them standing to do so. The secondary argument which applies to all of these Sprint entities, including Sprint Solutions, is quite simply the arbitration provision purports to require arbitration in New York. New York has absolutely nothing to do with anything in this case or any of Sprint's cellular operations. The undisputed record in this case is that Nextel had its corporate headquarters prior to the merger in Reston, Virginia. The undisputed record in this case is Sprint, prior to the merger, had its headquarters in Kansas, in two different cities. It wasn't clear to me post-merger where the headquarters was between those two states, but it was either Kansas or Virginia. My client's only operations are in Illinois. The undisputed evidence in this case is that there are no documents, witnesses, exhibits, nothing to do with this case as anything in New York. The undisputed evidence in this case is that while Sprint may have a cellular retail store in New York, it has nothing else in New York possibly be relevant to this case. So what makes it prohibitive to arbitrate in New York? The same thing that would make it prohibitive is the extreme distance and the fact that my client, with the termination of his contract or its contract, is utterly broke and at this point is out of business, although was still attempting to make a run while this record was made. As the court is well aware, New York is well over a thousand miles, probably a couple thousand miles from where my client operates. My client would have to travel to New York. My client would have to bring his witnesses to New York. My client would have to bring all his documents to New York. So there is nothing in New York that could be used in the way of witnesses, documents, evidence, that has anything to do with this case, and that is undisputed in the record. Does the record reflect, I'm assuming, and tell me if the record reflects this, this was a foreign contract sent out to all Sprint representatives across the country. Did they all have the New York provision? Every single one of them had the New York provision. If you're a Sprint dealer in L.A., you've got to go to New York for arbitration. If you're a Sprint dealer in Hawaii, you have to go to New York. Is there anything that requires commercial entities entering into an agreement to agree to a venue provision that has some connection to their contract? Why does it have to have some connection? It has to have some rational relationship to what's going on. Okay, what's the authority behind that then? According to the Illinois Supreme Court in Kalakau, the DNS manufacturer, which in turn cites the United States Supreme Court Bremen v. Sopata offshore company, quote, in order to hold a forum selection trial as unenforceable, enforcement must contravene the strong public policy of the forum, or the chosen forum must be seriously inconvenient for the trial of the action. It is the position of my clients that the forum chosen is seriously inconvenient for the trial of this action. In fact, it has no rational relationship whatsoever to this case. In Sprint's brief, the only thing that they even attempt to argue to justify why New York was selected is, quote, New York, of course, is a major metropolitan area and therefore relatively accessible for arbitrators and others from across the country. That's their only attempt to justify New York. Obviously, if they've chosen a Virginia forum, a Kansas forum, being that their headquarters are there, we'd be in a different boat. But Sprint doesn't have their headquarters in New York. Sprint doesn't have anything to do with this case in New York. They might as well have picked People's Republic of China. It's just an arbitrary, irrationally selected forum that is grossly inconvenient for my client. Frankly, it's grossly inconvenient for all of the witnesses that Sprint would call because none of them are from New York. It is just an arbitrary forum. Can we uphold the arbitration agreement but not the venue provision for the arbitration? Yes, you can. I think it's something that could go either way. It's possible to interpret the venue provision as being part and parcel of the arbitration provision. It's possible that it could be severed, like the anti-class action provision was severed by this court and the Supreme Court in Kinkel. That could go either way. Scanning that would be an acceptable outcome for my client, although primarily I'm arguing that the arbitration provision should be totally restricted. Those are my two primary arguments. I think those are the two best arguments. Unless the court has any other questions, I'll speak with you at revolve. Thank you. Thank you, Mr. Meg. Ms. Hogan? I can't face the court. My name is Deborah Hogan. I represent the Sprint third-party defendants as well as Mr. Trask in the implications of this appeal. Your Honors, this case is really about the principles of freedom of contract between two experienced business entities. The case is governed by Virginia law, which places tremendous importance on the principles of freedom of contract. Importantly, Nextel and Dennis Communications executed two previous agreements with virtually the same arbitration provisions that are at issue in this case, both requiring arbitration for the AAA in New York City. Importantly, Dennis Technologies has admitted that it signed both of those prior agreements of its own free will, that those were enforceable agreements, that they weren't unconscionable in any way. There is simply no factual or legal basis for holding that the third agreement that Dennis Technologies signed in 2006 with virtually the same arbitration provision is unenforceable. Dennis Technologies attempted to bargain for either no arbitration provision or a different arbitration provision. As Your Honor recognized, they were represented by counsel. There were negotiations over a period of several weeks and even months. Eventually, Dennis Technologies made the business decision that it was in its best business interest to sign this agreement even though it didn't want the arbitration provision, and if there was going to be an arbitration provision, it wanted a different form selection. It lost that negotiation. It didn't get what it wanted during the negotiations and it made the business decision to sign the agreement anyway. Dennis Technologies has no basis to ask the circuit court or this court to rewrite the contract in its favor, and that is essentially what Dennis Technologies is asking this court to do. They want to turn back the clock. They want to go back to when the contract was being negotiated, and instead of having legal counsel there trying to negotiate a different or better arbitration provision from them, they want this court to be in the room ordering Sprint to accept an arbitration provision that it refused to accept during the negotiations. And there is no basis, not under the Federal Arbitration Act, not under case law in Virginia, and not under case law in Illinois. There is simply no basis upon which Dennis Technologies can ask this court to rewrite the contract in its favor in that manner. Let me just ask you about the venue provision in New York, and I take it the same provision was in all the Sprint salespeople, whatever you want to call them, across the country. They all have a New York provision. Is that right? Correct, Your Honor. All of the independent dealers across the country were presented with the same record. All right. And I asked Mr. Mag, and you pointed out that Virginia law applies. What does Virginia law say about that type of form? Under what circumstances can that be challenged or whatever? Well, Your Honor, with respect to the case law that governs here on that point, we first start with the principle that the Federal Arbitration Act governs, and so we're dealing with federal substantive law on the enforceability of the arbitration provision. And under the FAA and federal substantive law, the only time this Court would look to state law to invalidate, potentially invalidate the arbitration provision or portion of the arbitration provision would be if there was some generally applicable contract effect, broad, direct, unpatchability. So the case law that Mr. Mag cites in his brief, the Illinois case law on forum selection clauses dealing with judicial forum selection clauses, that isn't generally applicable contract defense case law that applies when you're looking at arbitration provisions governed by the FAA. What about Section 9 U.S.C. 4 that says when a motion to compel arbitration is brought, it must be brought in a district that would have had jurisdiction over the dispute outside of arbitration? Right, Your Honor. You're addressing the issue that Dentist Technologies raised for the first time on appeal. They raised a new issue that was never raised in the trial court, which is whether or not the circuit court has authority under Section 4 to order arbitration outside of geographical boundaries. And as we explained in our brief, Your Honor, first of all, Dentist Technologies raised the issue by never raising it below, but in addition, even if they had raised the issue below, there's case law that clearly explains that federal procedural rules don't apply when we have a state court determining whether or not an arbitration provision is enforceable and whether or not to grant a stay or a motion to compel arbitration under the FAA. So the venue provision in Section 4 would be federal procedural rules that don't apply when you have a state court determining whether or not to grant a stay or a motion to compel arbitration. And in addition, Your Honor, even if it did apply, Dentist Technologies wouldn't be entitled to the relief they're seeking. It wouldn't somehow give the court authority to order arbitration either in a different location or to disregard the arbitration provision altogether. Section 4 deals with orders compelling arbitration. The state court would still be obligated to grant under Section 3 an order staying the litigation, and either stay the litigation or dismiss the litigation altogether. There's simply nothing that would give the state court authority to order arbitration elsewhere or to invalidate the arbitration provision altogether simply because we're not in a district court where arbitration is to take place in accordance with the Terms of Parts Agreement. So back to the issue of the New York Forum Selection Clause. Dentist Technologies argues that it can be invalidated because it has nothing to do with the case. It's not where Sprint's headquarters are located. It's not where Dentist Technologies are located. There simply is no basis. If we look at generally applicable contract premises, fraud, duress, and matchability, so then we look at what case law applies, we can look and see, is the New York Forum Selection unconscionable under Virginia law? It's not. The circuit court considered this issue and determined as a matter of fact and as a matter of law, the New York Forum Selection Clause is not unconscionable under Virginia law. Virginia law requires that in order for a contract provision to be determined unconscionable, it has to be a contract that no man in his right senses would agree to, no fair man would accept. Starting with the fact that Dentist Technologies admits it agreed to arbitration provisions requiring arbitration in New York City two times before, admits they weren't unconscionable, admits they signed it of their own free will. It simply can't be said that no man in his right senses would agree to it when Dentist Technologies admits that it agreed to it three times before. And there were legitimate business reasons why Sprint and Excel wanted to include a uniform arbitration provision in all of its contracts with dealers nationwide. It's operationally efficient for Sprint and Excel, and there's testimony in the record that it has to manage 3,000 dealers nationwide, and it simply could not negotiate individual changes to the contract and still be able to manage a dealer network efficiently. And under Virginia law, there are several additional reasons why the arbitration provision is unconscionable. Importantly, Dentist Technologies not only signed two agreements with the same arbitration provision prior to this third agreement that's been issued here today, but also after Dentist Technologies decided, after trying to negotiate changes, consulting with the legal counsel, considering its options, and making the decision to sign the agreement anyway, subsequently Dentist Technologies ratified the agreement. There's also case law in Virginia that says a contract's not going to be found unenforceable and unconscionable unless the party took steps to repudiate the contract. If the party has accepted the benefits of the contract for a period of time and validated the contract, the contract cannot be invalidated on grounds of unconscionability. Here, and the circuit court found this important, Dentist Technologies, after the fact, sent an email to Sprint saying, essentially, we're changing the nature of our business, we're changing our corporate form, we're now going to be operating under a different name, different corporate structure, but we will, of course, re-sign any contract that we need to with Sprint Nextel, thereby ratifying its willingness to enter into the contract with Sprint Nextel. And then, again, later, after Dentist Technologies was terminated, Dentist Technologies filed a motion seeking a preliminary injunction to prevent the termination of the contract. It wanted the contract to remain in effect. So it validated the contract on two separate occasions, and under those circumstances, Virginia Law will not find the contract to be unenforceable on grounds of unconscionability. Also, with respect to the New York form selection clause, Dentist Technologies essentially is trying to get the court to agree, or to order Sprint to change the form selection clause, which is something it specifically refused to do. And there simply is no basis for that under the applicable law. Let me ask you a question, if I could, about the standard of review. Certainly. And in your brief, you indicate you believe the standard of review is abuse of discretion, citing our case, Carter v. SSC Odin Operating Company, which, unfortunately, about a week or two ago, the Illinois Supreme Court reversed. So it's probably not good authority for you anymore. But multiple cases on arbitration clauses out of our court and others say standard of review is de novo, where there's no evidentiary here. Correct, Your Honor. So wouldn't it be manifest way to the evidence on facts determined, but de novo as to the issue? Well, Your Honor, that is not what the case law says. The case law makes a clear distinction on when there is an appeal on 307A and there's been an evidentiary hearing, the standard is abuse of discretion. Other Illinois cases say that besides Carter? There are, Your Honor. Perhaps we only cited the one in our brief. Some come to mind. Yandel, I certainly don't have the full cite memorized, is another one that comes to mind. There are several Illinois appellate decisions stating that the review is de novo with no evidentiary hearing abuse of discretion, if there was. And here, the court had a full-day evidentiary hearing. It heard the testimony of the witnesses. It considered the credibility of the witnesses, and it determined as a matter of fact and law that Dennis Technologies failed to meet its burden of approving either duress or unconstitutability. And specifically, with respect to the prohibitive cost issue, it's interesting if Dennis Technologies concedes that we'd be in a completely different boat if the provision said Virginia or Kansas City. While Virginia, it's hard to see how Dennis Technologies could say that wouldn't be equally expensive for Dennis Technologies to arbitrate in Virginia, yet it admits that it'd be a completely different boat and presumably enforceable if Nextel had chosen its own headquarters. Instead, Sprint Nextel chose a neutral location, New York, so that it would not be accused of requiring everyone to come to it. Instead, it chose a neutral location where the AAA is headquartered, where there's a wide selection of arbitrators available. The provision requires members who are going to serve on that panel of arbitrators to be from the telecommunications panel of the AAA. There's a wide selection of available arbitrators available in New York City where the headquarters of the AAA are. And it's a uniform location for all 3,000 dealers across the country. But importantly, with respect to the prohibitive cost issue, again, the circuit court heard the testimony of the witnesses and found specifically as a matter of fact that Dennis Technologies failed to meet its burden of proving that it would be prohibitively costly for Dennis Technologies to litigate in New York. It found that Dennis Technologies did not meet its burden of proof on that issue, and it did not present any evidence that it would be less costly to litigate in Madison County than it would be to arbitrate in New York. Of course, the applicable case law requires that the party attempting to argue that an arbitration provision is unenforceable on grounds of prohibitive cost present that type of evidence because, of course, there are reasons why arbitration can be less expensive than litigation, including streamlined discovery procedures and other procedures in arbitration, less costly appeals on the merits, that kind of thing. And Dennis Technologies presented none of that evidence, and the circuit court specifically found as a matter of fact that Dennis Technologies did not prove that it would be prohibitively cost-effective for it to arbitrate in New York City. One other issue that Dennis Technologies raised today is the issue of whether or not all of the Sprint Third Party defendants are parties to the arbitration agreement. That's an issue. Dennis Technologies attempted to argue below and continues to argue that only Sprint Solutions is a party to the May 2006 agreement. That agreement states that Sprint Solutions enters into the agreement on behalf of itself and its affiliates to provide products and services. And affiliates in that introductory paragraph of the agreement is with a lowercase a. It's not a capitalized a. It's not a defined term in the contract. In fact, there is a section in the contract of definitions and defined terms, and Dennis Technologies is trying to rely on a definition for a capitalized term, Sprint Partners, Next Hill Partners, Sprint Affiliates in the contract. It's paragraph 18a, 18a, I'm sorry, of the contract. I don't remember the page of the appendix off the top of my head. But that definition is obviously a defined term that is different than the word affiliates with a lowercase a in the introductory paragraph. There was testimony from one of Next Hill's witnesses on the issue of what Next Hill Partners, Sprint Affiliates is, and those are entities that operate networks. They actually are companies not affiliated, you know, or with overlapping ownership with any of the Sprint and Next Hill entities there. They're independent entities. Most of them are their own independent public companies. And given that affiliates with a lowercase a is an undefined term, the case law is clear. It should be interpreted in a more incidentally plain and ordinary meaning, which is corporations with overlapping ownership under common control. And, indeed, that is the case here, that all of the Sprint third-party dependents are subsidiaries of the same parent corporation. Therefore, they are all affiliates that are affiliates of Sprint Solutions, Inc., that are parties to the May 2006 AR agreement here. Circuit Court, again, heard testimony on this issue and specifically found that all of the Sprint third-party dependents were parties to the May 2006 AR agreement, and noting, of course, that it is Dennis Technologies that sued all of the Sprint third-party dependents for breach of contract, and if they aren't parties to the contract, it's hard to see how Dennis Technologies has a good basis for suing them for breach of that agreement. The only other issue I would like to mention is with respect to the branching of the motion to stay proceedings is to route the mask into communications as well. Dennis Technologies appealed that ruling as well, but there is clear guidance under Illinois case law that if the issues are interrelated, as they clearly are here, that proceedings can be stayed against other parties who are not parties to the arbitration agreement in order to further goals of judicial economy and because of the strong federal and Illinois policies favoring arbitration. And given that case law, the Circuit Court certainly didn't use its discretion in determining that a stay of proceedings against traps into communications was also appropriate. Thank you. Thank you, Ms. Hogan. Mr. May, do you have a rebuttal? A couple of factual points referenced by counsel. While, yes, my client, Dennis Technologies, did have two similar contracts with Nextel prior to this May 2006 document, my client testified the record is quite clear that he was comfortable with his relationship with Nextel. He was not comfortable with his relationship with Sprint, which purchased Nextel. My client did not, on two prior occasions or three prior occasions, sign arbitration provisions with Sprint for arbitration in New York. There's a fundamental distinction with voluntarily entering into certain agreements with somebody you trust and haven't had a problem with and being forced into a similar contract or agreement with somebody you don't trust that you're having ongoing disputes with. And the record reflects when the May 2006 contract was presented, there were ongoing disputes with Sprint. Furthermore, counsel made reference to weeks and months of negotiations for this May 2006 contract. The record actually reflects that there were no negotiations. There were attempted negotiations. Sprint was negotiating. Sprint didn't change a single term. Every single time Dennis Technologies tried to propose something to protect themselves, Sprint said no, take it or leave it. The definition of a contract that he should. Furthermore, counsel has argued repeatedly that federal substantive law applies to the Federal Arbitration Act. I cited in this court, which was cited in turn by the Illinois Supreme Court, the Bremen case from the United States Supreme Court on foreign selection clauses. To the extent that federal substantive law applies to the Federal Arbitration Act and this venue provision, the United States Supreme Court is the highest authority on what federal substantive law is. You're talking about bringing an action to enforce the arbitration clause in the district? Is that the case you're talking about? No, I'm talking about the case where the Illinois Supreme Court, quoting the Bremen case, stated it would uphold a foreign selection clause on imports. That's just in a general contract, though. It's not an arbitration agreement. And that is what is required under the Federal Arbitration Act. Illinois law cannot, or Virginia law or any state law, cannot specially set forth special venue rules for arbitration, which means you must apply general venue provisions that would apply both to arbitration and to litigation or other disputes generally. Hence the reason it's relevant. If Illinois or Virginia or any other state had enacted a statute supported to require any arbitrations take place in any particular place, that would probably be preempted by the Federal Arbitration Act. But because it's a generally applicable set of laws that would apply both in the arbitration context and outside of the arbitration context, it is not preempted by the Federal Arbitration Act. And I would like to close on one note. Counsel argued that my client signed this document, quote, under his own free will. There is a substantial difference between two businessmen, even on unequal terms, after a negotiation where any terms are negotiated, coming to an agreement and saying, okay, I don't like some of the terms, but I can live with some of what I got, and being told after you've been in business for several years, where you have expenses from being in business, where you have employees, where you have obligations, and are being told, here's your new deal, take it or leave it, and if you don't take it, you're fired. That's not signing under your own free will. That's the definition of duress. Unless there are any further questions. Thank you. Thank you, Mr. Magg. Thank you, Ms. Hogan. We'll take the matter under advisement and under review in due course.